# Richmond

CAREY MICHAEL CUNNINGHAM, AN INFANT, ETC. v. HOWARD EUGENE
FARLEY, AN INFANT.

April 23, 1962.

Record No. 5371.

Present, All the Justices.

*Paul Whitehead* and *William Rosenberger, Jr.,* for the plaintiff in
error.

*E. Marshall Frost* and *duVal Radford* (*Caskie, Frost, Davidson & Watts*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

■ Carey Michael Cunningham, an infant, hereinafter called plaintiff, instituted an action at law by his father and next friend against Howard Eugene Farley to recover $25,000 for personal injuries he sustained when the vehicle he was driving collided with the car Farley was operating. Farley, also an infant, hereinafter called defendant, filed a counterclaim in which he sought to recover $100,000 for the injuries he received.

There were three trials of the case before the same judge. At the first trial, plaintiff's motions to strike defendant's evidence in both the original action and the counterclaim were overruled. The jury was unable to agree upon a verdict, and plaintiff renewed his motions to strike defendant's evidence and requested that a jury be impanelled to assess his damages. After overruling these motions, the court set the case for a second trial beginning June 1, 1960. It resulted in a mistrial after all the evidence was presented except defendant's medical evidence. The third trial was had on September 28 and 29. Plaintiff's motions to strike defendant's evidence were again overruled. The jury found for defendant on his counterclaim and assessed his damages at $80,000, and also found for defendant on plaintiff's motion for judgment. After overruling plaintiff's motion to set aside the verdict, the court entered judgment thereon. We granted plaintiff a writ of error.

Since there was no verdict or judgment rendered in either the first or second trials, we will consider only the evidence and judgment on the verdict in the third trial which was appealed from.

■ The primary question raised by the assignments of error is whether the evidence is sufficient to support the verdict. Thus the evidence will be stated in some detail.

The collision occurred at approximately 2 a.m. on January 19, 1959, on Route No. 714 (now 720) about three tenths of a mile south of the intersection of Route No. 714 and Route No. 297, and about one mile east of Bedford. The highway at and near the scene of the collision runs north and south and was hard surfaced for an average width of 16 feet. On each side there was a narrow shoulder extending to a ditch from which a sloping bank arose several feet high. There was a crest in the highway with an ascending grade which began

about 200 feet from the crest in both directions. On either side the operator of a vehicle could see another approaching from the opposite direction when both vehicles were within a range of 75 feet from the crest of the hill. The road surface was not marked for traffic and was dry. The weather was clear and cold. The speed limit was 55 miles per hour.

The plaintiff, Carey Cunningham, age 17, was driving a Chevrolet sedan north on Route No. 714 between 40 and 45 miles per hour. There were no other occupants in the vehicle. The defendant, Howard Farley, age 18, was operating his Mercury sedan south between 35 and 40 miles per hour. In it also were his mother, Mrs. Lillian Farley, and her friend, Edward Watson. The debris found on the highway and the condition of the demolished automobiles indicated that the left front of the two cars collided head-on just north of the crest of the hill. As a result of the impact, the occupants of both vehicles were thrown to the ground. Farley and Watson were pinned underneath the car in which they were riding. All received injuries and were dispatched to the hospital for treatment.

There were no skid or gouge marks in the road itself. The vehicles had not been moved when the State trooper arrived shortly after the collision. They were about 75 feet apart. The Cunningham car came to rest on the east side of the highway north of the crest of the hill. Its rear end was against the bank and the front was protruding almost to the middle of the road. According to the trooper, there was a gouge in the bank which was made by the left rear wheel.

The Farley car was on the west side of the highway completely off the hard surface south of the crest. Its front end was in the ditch and its rear was up on the bank. On the top of the west bank there were tire marks extending northwardly from the vehicle between 30 and 40 feet. Debris was all over the road. Most of it was in the vicinity of the north side of the crest and extended for a distance of about 25 feet. The left front fender and headlight of the Farley car were found on the west side of the road.

Trooper R. L. Williamson testified that Mrs. Farley told him at the hospital that she did not know how the accident occurred as she "had her eyes closed and her head laying back on the seat resting", and that she "went in shock" at the hospital. He further testified that he talked to Edward Watson outside of the emergency room; that he had a strong odor of alcohol on him and "didn't talk sense", and that he was unable to talk to Farley.

Mattie Wright, who lived a short distance from the scene of the

accident and was the first person to arrive, stated that she responded to Mrs. Farley's pleas for help; that Mrs. Farley was "very upset"; that both Watson and Farley were pinned underneath their vehicle; that they were "moaning and groaning"; that at first she thought Watson was dead, and that Mrs. Farley told her in response to a question as to what happened that she "was asleep on the back seat."

The plaintiff, Cunningham, testified that he was returning home from calling on a girl, and that he did not drive through the town of Bedford because there was a curfew law in effect and "I didn't want to have any trouble with that." He further testified that he was traveling between 40 and 45 miles per hour on his proper side of the highway with his lights on high beam; that just as he was "topping the knoll", between 25 and 50 feet from the Farley car, he saw the lights on the Farley vehicle approaching partly on his (Cunningham's) side of the road; that he "cut" his car to the right into the ditch and was thrown out. He denied telling Farley and later Mrs. Farley that he did not remember how the accident occurred. He remained in the hospital about 48 days for his injuries.

Edward Watson stated that he was on the right side of the front seat and Mrs. Farley was seated between him and Farley; that he drank three cans of beer the evening before the morning of the accident; that as they were approaching the crest, they were talking about a dance Farley had attended; that Farley "was driving all right" at a speed between 35 and 40 miles per hour, and that "as far as I could tell he was driving on his side of the road" approaching the crest of the hill. He further stated that he did not see the lights of Cunningham's car; that his next conscious moment was about 10 a.m. that morning at the hospital, and that after he left the hospital the next day he went to the scene of the accident and observed debris all over the road and a fresh oil spot between 2 and 3 feet in diameter on the west side of the road or the southbound lane of travel.

The defendant, Farley, testified that he was employed as a barber in Bedford prior to the accident; that he was traveling between 35 and 40 miles per hour; that Watson and his mother, Mrs. Farley, were on the front seat of his vehicle; that he did not think his mother was asleep as she would join in the conversation he had with Watson "every once in a while"; that he remembered passing a big white fence on the east side of the road which was "almost at the crest of the hill", and that he was "positive" he was on his proper side of the road. He further testified that he did not recall seeing the Cunningham car or its lights or remember the impact of the two vehicles; that

he remembered nothing about the accident after he had passed a point about 30 feet from the crest of the hill, that the accident rendered him unconscious and he did not regain consciousness until the next day. He also testified that Cunningham on a visit to the hospital told him that he did not know how the collision occurred and remembered nothing about it. Farley received serious and permanent injuries, which required hospitalization for months. He sustained a spinal injury and was paralyzed from his chest down.

Lillian Farley, defendant's mother, stated that she was seated between her son and Watson; that she was not asleep and was looking ahead. She denied having said to Mattie Wright that she was in the back seat asleep, and she also denied telling the State trooper that she had her head back and her eyes closed. She also stated that it makes her sick to ride with her eyes closed; that the lights on the Farley car were burning; that she did not see the Cunningham car or its lights; that "just as we were getting over the top of this knoll was the last thing I remember except I heard the crash"; that Farley "was driving on his right hand side of the road", and that the next thing she remembered she was lying in the road. She also stated that she was "badly hurt"; that Watson, Cunningham and her son were "groaning"; that she attempted to get up but fell "a good many times" before she was successful; that she "screamed" for help and Mattie Wright responded, and that Cunningham on a visit to her home said that the accident "happened so quick he didn't know what happened."

Dr. Freeman Jenrette, in response to hypothetical questions asked by defendant's counsel, stated that the lack of memory of Farley and his mother with regard to certain details of the accident could be attributed to the injuries they received. He stated he thought they had retrograde amnesia.

We have many times said that a litigant with a jury verdict in his favor, confirmed by the trial court, occupies a strong position and that in such a case we must view the evidence and reasonable inferences from it in the light most favorable to him. *Railway Express* v. *Moore*, 201 Va. 928, 931, 114 S. E. 2d 626; *Adams* v. *Allen*, 202 Va. 941, 945, 121 S. E. 2d 364.

In applying this principle of law, we find that the evidence adduced was sufficient to sustain the verdict for defendant on plaintiff's motion for judgment and on defendant's counterclaim. The evidence was conflicting and does not show, as a matter of law, that either plaintiff or defendant was guilty of negligence that was a proximate cause of the accident. As the trial judge held, it was a question for the jury

to decide. They chose to disregard plaintiff's evidence and accept that of defendant, which they had a right to do, and concluded that plaintiff was guilty of negligence which was the sole proximate cause of the accident. Under these circumstances we cannot disturb the verdict.

Having taken this view of the case, we find no reversible error in the giving of certain instructions offered by defendant which was assigned as error.

We find no merit in the other assignments of error which allege that the court erred in refusing to strike defendant's evidence at the first and third trials and in refusing to set aside the verdict as being contrary to the law and the evidence and enter judgment for plaintiff, or in the alternative, grant him a new trial.

For the reasons stated, the judgment appealed from is

*Affirmed.*